# Use of Foreign Vessels to Transport Petroleum from the Virgin Islands to the United States Mainland

Under the Merchant Marine Act of 1920, the President is authorized to extend the coastwise laws of the United States to the Virgin Islands, and thus mandate the use of U.S. vessels for transportation of passengers and merchandise from the Virgin Islands to the U.S. mainland.

There is a strong argument that the President is empowered to make the coastwise laws applicable to the Virgin Islands solely for the carriage of petroleum and petroleum products.

January 30, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT TO THE PRESIDENT FOR DOMESTIC AFFAIRS AND POLICY

Several months ago, we were informally asked by your staff to consider whether the President can require the use of U.S. vessels to transport petroleum products from the Virgin Islands to the U.S. mainland. The question is whether the President has the authority to declare that the coastwise laws of the United States shall extend to the Virgin Islands solely for the carriage of petroleum and petroleum products. While we understand that the matter is not under active review at this time, we have been advised that the results of our research are nonetheless relevant to your staff's consideration of proposals that may be considered in the future.

In general, the coastwise laws require that passengers and merchandise be transported between points in the United States in vessels built in and documented under the laws of the United States and owned by citizens of the United States.[1] 46 U.S.C. §§ 289, 877, 883. They are intended "to provide protection for American shipping by excluding foreign shipping from performance of domestic maritime business." 42 Op. Att'y Gen. 189, 196 (1963). At present the Virgin Islands are excepted from these coastwise laws. Therefore, petroleum refineries located in the Virgin Islands can transport petroleum products to United States ports on less expensive foreign vessels, thus enjoying a competitive advantage over refineries located on the U.S. mainland.

---

[1] There is no statutory definition of coastwise laws but they are considered to refer to laws regulating the "coastwise trade," meaning domestic trade between ports in the United States. 42 Op. Att'y Gen. 189, 192 (1963).

We have had the benefit of separate letters prepared by the Commerce Department and the Maritime Administration expressing the view that the President has the authority to issue a proclamation making the coastwise laws applicable to petroleum.. Based on our review, we agree with that conclusion. However, the case that can be made for issuance of a proclamation involves significant legal problems. These should be considered in evaluating this course of action, since it is probable that the proclamation will be challenged in litigation.

At the outset it will be useful to describe the various laws that bear on this matter and how they came to be enacted. The exception from the coastwise laws for the Virgin Islands has a complicated history, resulting from the relationship of two spearate laws: The Merchant Marine Act of 1920 and the Organic Act of the Virgin Islands, enacted in 1936.

The Merchant Marine Act of 1920 extended the coastwise laws of the United States, as of February 1, 1922, to the "island Territories and possessions of the United States not covered thereby on June 5, 1920." 46 U.S.C. § 877. This language covered the Virgin Islands, but the Act provided for an exception, if "adequate shipping service"—both commercial and passenger—was not yet established for any island territory or possession. The President was given the authority to extend the period of exemption from the coastwise laws "for such time as may be necessary for the establishment of adequate shipping facilities."

Between 1922 and 1936 every President acted, on a yearly basis, to exempt the Virgin Islands from the coverage of the coastwise laws. H.R. Rep. No. 2281, 74th Cong., 2d Sess. 1 (1936). In 1936, the Merchant Marine Act of 1920 was amended by the addition of a specific exception for the Virgin Islands:

> *And provided further,* That the coastwise laws of the United States shall not extend to the Virgin Islands of the United States until the President of the United States shall, by proclamation, declare that such coastwise laws shall extend to the Virgin Islands and fix a date for the going into effect of same.

46 U.S.C. § 877. The result of this added provision was no longer to require affirmative presidential action to continue the exemption, but rather to require that the exemption would remain in effect until the President takes action to terminate it.

The 1936 Virgin Islands proviso does not refer to the need for a finding by the President that "adequate shipping service" has been established before he could invoke the coastwise laws. The Senate had provided for such a requirement. The House Committee on Merchant Marine and Fisheries pointed out, however, that it had "no intention of weakening in any way the coastwise laws" and that "the establishment

of an adequate shipping service to the islands might be prevented by the continued suspension of the coastwise laws." The Committee noted that the President would be denied "sufficient flexibility" by the requirement in the Senate bill that there first be adequate shipping before restricting the Virgin Islands trade to American shipping. Thus, under the House proviso "the President would be authorized *at any time,* by proclamation, to declare that the coastwise laws should extend to the Virgin Islands and fix a date for the going into effect of the same." (Emphasis added.) The language of the proviso was therefore viewed as a formula which would make reimposition of the coastwise laws more likely. H.R. Rep. No. 2281, 74th Cong., 2 Sess. 2 (1936).

It appears that the Executive Branch was motivated to support the bill for different reasons—the importance to the economy of the Virgin Islands of bunkering foreign vessels. Letter from Interior Secretary to House Committee on Merchant Marine and Fisheries, Jan. 9, 1935, reprinted in H.R. Rep. No. 2281, *supra* at 2-3.[2] Although the House Committee took note of this fact, *id.* at 2, as a reason for supporting the bill it is apparent that the precise language adopted by the House and ultimately accepted by the Senate was motivated by a desire to grant the President discretion easily to extend the coastwise laws.[3]

About two months later, June 22, 1936, the same Congress passed the Organic Act of the Virgin Islands, which contained a provision relating to application of laws concerning navigation and commerce:

> . . . except as otherwise expressly provided, all laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interest of navigation and commerce shall apply to the Virgin Islands.

49 Stat. 1808. It is not clear what effect this amendment had on application of the coastwise laws to the Virgin Islands. Repeals by implication are not favored, however, 1A *Sutherland Statutory Construction* § 23.10 (Sands ed. 1972), and since the exemption from the coastwise laws was "expressly provided" for, it is fair to conclude that the Organic Act did not reimpose the coastwise laws. It hardly seems that Congress would have reversed a policy adopted only two months earlier without explaining that it meant to do so.

It was feared, nevertheless, that the Organic Act would interfere with the shipping trade in the Virgin Islands because of other federal

---

[2] Evidence of the same kind was collected in hearings held in 1932 on an earlier version of the legislation that did not pass. *Relating to the Application of the Coastwise Laws to the Virgin Islands. Hearings on H.R. 10329 before the House Committee on Merchant Marine, Radio, and Fisheries,* 72d Cong., 1st Sess. (1932).

[3] The Senate report relied on the Executive position, S. Rep. 1010, 74th Cong., 1st Sess. (1935), but, since Congress enacted the bill in the precise form recommended by the House, that report should be viewed as more authoritative. The Senate concurred in the House amendment without comment. 80 Cong. Rec. 5069 (1936).

laws which it imposed. In 1939 legislation was passed amending the Organic Act so that these laws were no longer applicable. Specific language expressly exempted the Virgin Islands from tonnage duties, light money, and entrance and clearance fees. 53 Stat. 1242, 48 U.S.C. § 1405c(c). Moreover, the language in the Organic Act which had incorporated federal laws "for the preservation of the interest of navigation and commerce" was deleted. 53 Stat. 1242. Nothing in the 1939 amendment made the coastwise laws specifically inapplicable, which would have been technically necessary if the Organic Act had been thought to have repealed the 1936 proviso to the Maritime Act. The President was, however, again authorized to make the coastwise laws applicable at a future time. 48 U.S.C. § 1405c(d).[4]

Thus, as of 1939 there was *one* law making the coastwise laws inapplicable—the 1936 proviso to the Merchant Marine Act of 1920, 46 U.S.C. § 877—but two which permitted the President to make them applicable, the same proviso and the 1939 amendment to the Organic Act, 48 U.S.C. § 1405c(d).

As of today, it seems that the Organic Act may no longer be relied on as authority to apply the coastwise laws. This is because the 1936 Organic Act was replaced by a Revised Organic Act in 1954, which states:

> The laws of the United States applicable to the Virgin Islands on July 22, 1954, including laws made applicable to the Virgin Islands by or pursuant to the provisions of the Act of June 22, 1936 . . . shall, to the extent they are not inconsistent with this chapter, continue in force and effect until otherwise provided by Congress. . . .

48 U.S.C. § 1574(c). This provision requires some interpretation as to what is meant by "laws made applicable" to the Virgin Islands by the 1936 Organic Act. There is thus a question whether this provision effectively repealed § 1405c, or whether it, in fact, carried forward the President's proclamation power. In the only case so far to address the issue of repeal, the Third Circuit said "[i]t . . . seems clear that the Revised Organic Act of 1954 operated to repeal the Organic Act of 1936." *Virgo Corp.* v. *Paiewonsky,* 384 F.2d 569, 578 (3d Cir. 1967), *cert. denied,* 390 U.S. 1041 (1968).

---

[4] The reports on the 1939 amendment do not indicate that the coastwise laws had been imposed after 1936 or that the amendment was necessary to make them inapplicable. They state that the purpose of the amendment was to make inapplicable "Federal navigation and other laws" which prevent the Virgin Islands from competing with other ports. S. Rep. No. 808, 76th Cong., 1st Sess. 1 (1939); H.R. Rep. No. 1314, 76th Cong., 1st Sess. 1 (1939). This seems to be a reference not to the coastwise laws but to the various fees specifically covered by the amendment. The fact that the coastwise laws had not been imposed is supported by the statement in the report that the bunkering business "*may* be adversely affected" unless the bill passed. (Emphasis added.) If they had been applied then the trade would have been largely eliminated.

Nevertheless, the court also observed: "We find no indication in the Revised Organic Act that the Congress intended any part of the Act of 1936 to remain in force after the Revised Organic Act took effect, except those provisions of the Act of 1936 which had made certain laws of the United States applicable to the Virgin Islands." *Id.* at 576. Since the holding of the case did not involve these provisions, it is not clear whether a court would find that the President, under "applicable" law, could still issue a proclamation under the Organic Act or whether only Congress could do so.

The closest direct authority appears to be a footnote in an opinion of the Attorney General stating that the President could no longer amend Executive Order No. 9170 as a result of the passage of the Revised Organic Act. 42 Op. Att'y Gen. 189, 190 n.2 (1963). As a result any attempt to use the old Organic Act as authority is clouded.[5]

This sketch of the tangled legislative history of these Acts strongly suggests that whatever authority there is for the President's ending the exemption derives from the Merchant Marine Act of 1920. It leads to two further questions: (1) whether the President can apply only one of the coastwise laws, *i.e.*, 46 U.S.C. § 877, relating to carriage of merchandise, to the exclusion of other coastwise laws; and (2) whether he can apply it to a particular type of vessel—oil tankers.

The language of the Merchant Marine Act does not answer the questions clearly. It states, 46 U.S.C. § 877, "[t]hat the coastwise laws of the United States shall not extend to the Virgin Islands . . . until the President . . . shall . . . declare that such coastwise laws shall extend. . . ." The amended (and presumably repealed) Organic Act, 48 U.S.C. § 1405c(d), stated: "the President shall have power to make applicable to the Virgin Islands such of the navigation, vessel inspection, and coastwise laws . . . as he may find and declare to be necessary in the public interest. . . ." The difference between the former ("such coastwise laws") and the latter ("such of the . . . coastwise laws") may be more than semantic: the latter seems to give the President the authority to apply "parts" of the coastwise laws, while the former does not as readily lend itself to this interpretation.

This alone should not be determinative. In deciding what Congress intended one should keep in mind that the "coastwise laws" are not a simply defined body of law but a traditional reference to a series of acts passed at different times for different reasons. For example, the Foreign Dredge Act, 46 U.S.C. § 292, has been found by the Attorney General to be one of the coastwise laws. 42 Op. Att'y Gen. 189 (1963). Since 46 U.S.C. § 877 seems to be primarily concerned with adequate shipping

---

[5] This also undercuts the argument made by both the Commerce Department and the Maritime Administration that Executive Order No. 9170, May 21, 1942, serves as a precedent for selective Presidential action in this area. That order was based upon the language of the old Organic Act. Even if this were not so, it is not at all clear that the order applied selective parts of statutes. *See* 42 Op. Att'y Gen., *supra* at 198–99.

service, it would seem, for example, that the President might issue a proclamation relating to the coastwise laws as they related to shipping but not include the Foreign Dredge Act. It is our conclusion that the coastwise laws should not be considered indivisible but should be judged in light of congressional intent.

A more difficult question is whether the President could make the coastwise laws applicable only to oil tankers. Again, there is a strong argument that Congress sanctioned such action. When it enacted the Virgin Islands proviso in 1936, Congress was interested in giving the President "flexibility" in restoring the coastwise laws and authorized him to issue a proclamation "at any time." H.R. Rep. No. 2281, 74th Cong., 2d Sess. 2 (1936). If the President were faced with a situation where there was a glut of domestic tanker capacity due to decreased shipments from abroad, but no prospect that any other type of domestic shipping would be adequate to meet the needs of the Virgin Islands, it may well be that Congress, in protecting the domestic fleet, would rather have the coastwise laws apply in limited fashion to oil tankers rather than not have it apply at all. This theory is untested, of course, and would be subject to judicial challenge, but we cannot say that it would be unsuccessful.[6]

We would be pleased to provide whatever further assistance you may require. In light of the complexity of this particular statutory structure, and given the probability of eventual litigation, it is apparent that careful consideration of any proposal is merited.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[6] A question may be raised as to whether Congress may constitutionally delegate to the President flexibility of the kind argued for here. This provision, however, is considerably narrower in its scope than others permitting the President to determine the terms on which foreign and domestic commerce may compete and which have been held to meet constitutional standards. *United States* v. *Yoshida International, Inc.,* 526 F.2d 560, 582 (C.C.P.A. 1975); *cf. FEA* v. *Algonquin SNG, Inc.,* 426 U.S. 548, 558 (1976); *United States* v. *Curtiss-Wright Export Corp.,* 299 U.S. 304, 320 (1936).